[Civ. No. 1737. Fourth Appellate District.—May 7, 1936.]

GEORGE KAKU, Appellant, v. WYLIE M. GIFFEN et al., Respondents.

J. A. Chase for Appellant.

H. A. Savage and V. D. Manville for Respondents.

BARNARD, P. J.—This is an action on a promissory note for $5,141.18, executed by the defendants and delivered to the plaintiff. From a judgment in favor of the defendants the plaintiff has appealed on a bill of exceptions.

After the note became due the appellant delivered the same to one Geo. C. Wells with an endorsement reading: "Pay to the order of Geo. C. Wells, without recourse. George Kaku." Wells exhibited the note and endorsement to Giffen, who had executed the note on behalf of both defendants, and demanded payment, stating that he had purchased the note and was then the owner thereof. Mr. Giffen explained to him that his affairs were all in the hands of a "creditors' committee" and that he had no funds with which to make payment without the consent of this committee. A month or so later Wells brought suit on the note, alleging that he "is now the true and lawful owner and holder thereof". This suit was dismissed without prejudice on November 18, 1932.

On April 10, 1933, Wells came to Giffen and offered to compromise the debt represented by the note. As the result of an agreement then entered into, which was approved by the creditors' committee, Mr. Giffen made a cash payment to Wells and gave him five notes coming due on various dates during the next ten months, and Wells agreed to return the original note, which he did not have with him when the agreement was made. Mr. Giffen paid three of the five notes as they came due and then offered to pay the other two on condition that the original note be surrendered. Thereafter this action was brought by the appellant, although there is no evidence that the note in question had been retransferred to him by Wells.

It is appellant's contention that he assigned the note to Wells for collection only, that he was the owner thereof at all times, that Wells had no authority to compromise the debt, that since he was in possession of the note when this suit was brought the burden was upon the respondents to show that he did not have title thereto, and that the settlement made is not binding upon him both because Wells had no authority to

compromise the matter and because Wells did not exhibit the note at the time the settlement agreement was made.

It fully appears that Mr. Giffen had no knowledge of any agency arrangement between the appellant and Wells or of the fact that the appellant retained any interest in the note. He dealt with Wells as the owner of the note and, leaving out of consideration anything said to him by Wells, he was shown the note with its endorsement, and later Wells filed suit alleging ownership in himself, this suit having been filed by the same attorney who represented the appellant throughout the present action. The essential question here is not who was in fact the owner of the note or whether Wells exceeded the authority given him by the appellant. The real question is whether the respondents were justified in dealing with Wells as the owner of the note, and this must be answered in their favor. The appellant had clothed Wells with the apparent ownership of the note and power to dispose of the same; the apparent ownership was confirmed by the filing of a suit; the respondents had dealt with Wells in getting the suit dismissed; and they had no knowledge that the endorsement was not what it appeared to be.

Although Wells did not exhibit the note at the time the final agreement was made, the circumstances were such that the respondents had a right to rely on his apparent ownership of the note. The appellant had enabled Wells to hold himself out as the owner of the note, and he is bound by the acts of his agent whether these were in excess of the authority given or amounted to fraud as against him. In *Conklin* v. *Benson*, 159 Cal. 785 [116 Pac. 34, 36 L. R. A. (N. S.) 537], the court said:

"As originally said in *McNeil* v. *Tenth Nat. Bank*, 46 N. Y. 325 [7 Am. Rep. 341], and approvingly quoted in *Woodsum* v. *Cole*, 69 Cal. 142 [10 Pac. 331], and *Dover* v. *Pittsburg Oil Co.*, 143 Cal. 501 [77 Pac. 405]: 'Where the true owner holds out another, or allows him to appear as the owner of or as having full power of disposition over the property, and innocent third parties are thus led into dealing with such apparent owner, they will be protected. Their rights in such cases do not depend upon the actual title or authority of the party with whom they deal directly, but are derived from the act of the real owner, which precludes him from disputing, as against them, the existence of the title or power, which

through negligence, or mistaken confidence, he caused or allowed to appear to be vested in the party making the conveyance.' The same general doctrine was applied in *Schultz* v. *McLean*, 93 Cal. 329, 356 [28 Pac. 1053], where the fraud occasioning injury was practiced by the plaintiffs' own agent in the matter of the delivery of a deed, the vendee being one in good faith and for value. This court there said: "Where one of two innocent persons must suffer by the fraud or negligence of a third, whichever of the two has accredited him ought to bear the loss." This principle is recognized by section 3543 of the Civil Code, which reads: "Where one of two innocent persons must suffer by the act of a third, he by whose negligence it happened, must be the sufferer," . . . In this case, plaintiffs and defendant were both innocent. Neither knew that the fraud was being practiced; but if that fraud was productive of injury, the injury must result to the plaintiffs, for they placed it in the power of the wrongdoer to perpetrate the fraud.' "

It may be further noted that the court found that the appellant knew of the settlement agreement that had been made between Wells and the respondents, and that he had knowledge of all facts in connection therewith. This finding is not attacked and nothing to the contrary appears in the bill of exceptions. Notwithstanding such knowledge the appellant permitted the respondents to pay three of the notes to Wells, after having made the original payment to him. Aside from any other consideration the appellant is now estopped from attacking the settlement made even if it be assumed that Wells exceeded his authority as his agent.

The judgment is affirmed.

Marks, J., and Jennings, J., concurred.

A petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on July 6, 1936. Seawell, J., voted for a hearing.