(No. 13392.—Reversed and remanded.)

THE STATE BANK OF CHICAGO, Defendant in Error, *vs.*
THE MID-CITY TRUST AND SAVINGS BANK, Plaintiff in
Error.

*Opinion filed December 21, 1920—Rehearing denied Feb. 2, 1921.*

1. BILLS AND NOTES—*effect of acceptance of check.* Under the
Negotiable Instruments act, when the holder of a check procures
it to be accepted or certified the drawer and all indorsers are dis-
charged from liability thereon and the drawee alone becomes liable
for payment.

2. SAME—*effect of stamping acceptance on check without notice
to or knowledge of drawer or payee.* An acceptance stamped on
the face of a check by the drawee bank without the knowledge or
consent of the drawer or payee is of no effect, as the drawee can
not, without such knowledge or consent, change the rights and lia-
bilities of the other parties to the check.

3. SAME—*payment of check upon forged indorsement is not an
acceptance.* Under the provisions of the Negotiable Instruments
act, payment of a check upon a forged indorsement, stamping it
paid and charging it to the account of the drawer do not consti-
tute an acceptance of the check or create a liability of the bank to
the true holder or payee.

4. SAME—*distinction between acceptance and payment.* Accept-
ance is a promise to pay in the future and continues the life of the
bill, whereas payment is the final act which extinguishes the bill.

5. SAME—*effect of unrequested acceptance upon liability of the
bank.* If the drawee bank has accepted a check at the request of
the payee it is liable to the payee, but if the acceptance is not at
the request of the payee it is of no effect as to him and the lia-
bility of the bank to the drawer is not affected by it.

WRIT OF ERROR to the First Branch Appellate Court for
the First District;—heard in that court on appeal from the
Circuit Court of Cook county; the Hon. F. JOHNSTON, JR.,
Judge, presiding.

GUSTAV E. BEERLY, (ELLIS S. CHESBROUGH, of coun-
sel,) for plaintiff in error.

T. F. MONAHAN, and GEORGE E. FINK, for defendant
in error.

Mr. JUSTICE DUNN delivered the opinion of the court:

The Appellate Court having affirmed a judgment of the circuit court of Cook county for $2276.30 recovered by the State Bank of Chicago against the Mid-City Trust and Savings Bank, a writ of *certiorari* was awarded upon the petition of the latter bank to review the record.

Samuel J. Lumbard, a lawyer, who was a depositor in the State Bank of Chicago, drew a check on August 10, 1916, for $2060, payable to James Glen, who had been his client for several years and who lived at 4027 Gladys avenue. The check was presented by somebody, neither the maker nor the payee, to the State Bank and was stamped, "Accepted for $2060, August 12, 1916, payable through Chicago clearing house when properly indorsed." This acceptance was signed by the paying teller of the State Bank. The check was deposited in the Mid-City Trust and Savings Bank by James Glen, who was a depositor in that bank and lived at 2214 West VanBuren street, and who indorsed the check. He was a son of James Glen the payee. The Mid-City Trust and Savings Bank indorsed the check to the First National Bank of Chicago, and on August 15 it was paid through the clearing house by the State Bank, which charged it to Lumbard's account. Lumbard received the canceled check from the bank on September 3 or 4, together with his August statement, and on September 9 Edward Glen, a son of his client, came to his office and inquired if the money represented by the check had been paid to Lumbard. Lumbard said it had been paid and that he had sent a check to Edward's father. The check was shown to Edward, who said that the indorsement was not his father's signature. Lumbard immediately took the check to the State Bank and told the cashier that the indorsement was not that of the payee. The cashier telephoned the Mid-City Trust and Savings Bank and notified it that the State Bank claimed the indorsement was a forgery and expected the Mid-City

Trust and Savings Bank to make it good. This was about twelve o'clock on Saturday, at which hour the bank closed. On Monday, September 11, in accordance with the customary procedure in such cases, an affidavit of James Glen, the payee of the check, was made, stating that the indorsement was not his signature and was not authorized by him but was a forgery and that he had not received all or any of the money stated in the check. The affidavit, with the check attached, was delivered to the Mid-City Trust and Savings Bank, which on September 23 returned the same to the State Bank, refusing to reimburse it but agreeing to make defense if any action was brought against the State Bank by the maker of the check. Thereupon the State Bank brought an action of assumpsit against the Mid-City Trust and Savings Bank and recovered the judgment in question.

The declaration consisted of two counts, in each of which it was alleged that the plaintiff on August 12, 1916, accepted the check and thereby became liable to pay to the legal owner the amount of the check.

On the trial Lumbard testified that after writing the check he handed it to one of his stenographers and told her to send it to James Glen, and that was the last he saw of it until it came back through the bank; that the stenographer had written several letters before to James Glen and he did not tell her the address. The defendant offered to prove that Lumbard inclosed the check on August 10 in a letter addressed to James Glen and mailed it to James Glen at 2214 West VanBuren street, where James Glen, the son of the payee, resided, and that James Glen the son deposited the check on August 12 with the Mid-City Trust and Savings Bank; but the court refused to admit the evidence on the ground that Lumbard's negligence could not be charged against the State Bank. A motion by the defendant to instruct the jury to return a verdict in its favor was denied.

The contention of the plaintiff in error is that the court erred in refusing to admit the offered evidence and in denying the motion to direct the verdict.

On the question of directing the verdict the plaintiff in error contends that the evidence does not show an acceptance of the check which created a liability of the defendant in error to the payee. Though the acceptance was in writing it was not requested by or known to the payee. The check never was delivered to the payee or came into his possession. He never saw it or knew of it until it had been presented, paid, canceled and returned to the maker. Though his name was used he was a stranger to the whole transaction and neither acquired any right nor incurred any liability by reason of it. When the holder of a check procures it to be accepted or certified, the drawer and all indorsers are discharged from liability thereon. (Negotiable Instruments act, sec. 187.) The act in this respect merely declares the law as it previously was. (*Metropolitan Nat. Bank* v. *Jones,* 137 Ill. 634.) The parties to a check are the drawer, the payee and the drawee, and the liability of each is fixed by law. The acceptance or certification of a check by the drawee after it is issued changes the rights of the parties by releasing the drawer, the drawee becoming alone liable for the payment. Therefore, an acceptance stamped on the face of a check, as in this case, without the consent or the knowledge of the drawer or the payee was of no effect. A drawee cannot change the contract of the other parties to a check or affect their liabilities on the instrument without their consent or knowledge. The purported acceptance did not change the relations of the parties to the check or make the defendant in error liable to James Glen. Whatever questions of estoppel may arise in case of possible circumstances which do not exist need not be considered. It is sufficient that the rights of the parties to this check were not affected by the stamping of the acceptance upon its face.

The defendant in error contends that the payment of the check shows acceptance by the bank, urging that there can be no more definite act by the bank upon which a check has been drawn showing acceptance than the payment of the check. Section 184 of the Negotiable Instruments act provides that the provisions of the act applicable to bills of exchange apply to a check, and section 131 that the acceptance of a bill must be in writing signed by the drawee. Payment is the final act which extinguishes a bill. Acceptance is a promise to pay in the future and continues the life of the bill. It was held that payment of a check upon a forged indorsement did not operate as an acceptance in favor of the true owner in *First Nat. Bank* v. *Whitman,* 94 U. S. 343. The contrary was held in *Pickle* v. *Muse,* 88 Tenn. 380, and *Seventh Nat. Bank* v. *Cook,* 73 Pa. 483, at a time when the Negotiable Instruments act was not in force in those States. The opinion of the Supreme Court of the United States seems more logical and the provisions of the Negotiable Instruments act now require an acceptance to be in writing. Under this statute the payment of a check on a forged indorsement, stamping it paid and charging it to the account of the drawer do not constitute an acceptance of the check or create a liability of the bank to the true holder or the payee. *Elyria Savings and Banking Co.* v. *Walker Bin Co.* 92 Ohio St. 406; *Baltimore and Ohio Railroad Co.* v. *First Nat. Bank,* 102 Va. 753.

The acceptance of the check was an essential element of the cause of action stated in the declaration. If all the allegations in regard to the acceptance of the check were stricken from the declaration it would still state a cause of action against the defendant for it would show a liability of the defendant in error to the maker of the check, but it would be a different and inconsistent cause of action, based upon a different state of facts and a different liability and subject to different defenses. The defendant in error could not be liable to both the maker and the payee of

the check. If the acceptance of the check had been made at the request of the payee it would have made the bank liable to the payee. Since it was not made at the request of the payee it was of no effect as to him and the liability of the bank to the drawer was not affected by it. The legal effect of the declaration was to deny the liability to Lumbard, the drawer, and aver a liability to James Glen, the payee. Since there was no proof of such liability the court should have sustained the motion to direct a verdict for defendant.

The judgments of the Appellate Court and the circuit court will be reversed and the cause will be remanded to the circuit court for a new trial.

*Reversed and remanded.*

---

(No. 13504.—Judgment affirmed.) ·
THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* FRANK SURACE, Plaintiff in Error.

*Opinion filed December 21, 1920—Rehearing denied Feb. 3, 1921.*