[Civ. No. 5423. First Appellate District, Division One.—April 25, 1927.]

HENRY COWELL LIME & CEMENT CO. (a Corporation), Appellant, v. SANTA CRUZ COUNTY NATIONAL BANK OF SANTA CRUZ (a Corporation), Respondent.

[Civ. No. 5424. First Appellate District, Division One.—April 25, 1927.]

HENRY COWELL LIME & CEMENT CO. (a Corporation), Appellant, v. FARMERS AND MERCHANTS NATIONAL BANK OF SANTA CRUZ (a Corporation), Respondent.

[1] AGENCY—ACTS CONFERRING OSTENSIBLE AUTHORITY ON AGENT—RELIANCE BY THIRD PERSONS—GOOD FAITH.—A principal conferring ostensible authority on an agent by acts cannot assert, as against a third person relying thereon in good faith, that he did not intend to confer such power; "ostensible authority," as defined by section 2317 of the Civil Code, being such as the principal, intentionally or by want of ordinary care, causes or allows a third person to believe the agent to possess.

[2] ID.—DEALINGS WITH OTHERS—CASHING CHECKS—EVIDENCE.—Evidence of an agent's dealings with those having business transactions with his principal is admissible in order to establish the ostensible authority of the agent to cash checks payable to his principal.

[3] ID.—AUTHORITY OF AGENT—EVIDENCE.—In these actions against certain banks for cashing checks payable to plaintiff and indorsed by plaintiff's agent, who appropriated the proceeds to his own use, the evidence was sufficient to show that the banks were justified in believing that plaintiff's agent had authority to indorse and cash the checks, notwithstanding the direct testimony of plaintiff that his agent had no such authority.

[4] ID.—DENIAL OF AGENT'S AUTHORITY TO ACT—ESTOPPEL.—Where a principal makes it possible, through his acts, for his own agent to inflict injury, the result of such injury should not be passed on to innocent persons who have dealt with the agent in good

1.   See 1 Cal. Jur. 739.
2.   See 1 Cal. Jur. 746.
4.   See 1 Cal. Jur. 744; 21 R. C. L. 907.

faith under his apparent authority, and in such a case the principal is bound by his acts and estopped by his own conduct from denying the authority of the agent to act.

[5] ID.—AUTHORITY TO CONDUCT BUSINESS—RELIANCE BY THIRD PERSONS.—Where an agent is by his principal put in charge of a business as the apparent manager, he is clothed with apparent authority to do all things essential to the ordinary conduct of such business, and third persons, acting in good faith and without notice of or reason to suspect any limitations on his authority, are entitled to rely on such appearance, under section 2300 of the Civil Code.

[6] ID.—LOSS BY ONE OF TWO INNOCENT PERSONS—DEALINGS WITH AGENT—LIABILITY OF PRINCIPAL.—Where one of two innocent persons must suffer, the loss should be borne by him whose act made the loss possible, and a loss through the trust and confidence placed by a principal in his agent should not be borne by those who were led to deal with the agent through the acts of the principal.

---

(1) 2 C. J., p. 574, n. 44, 45.    (2) 2 C. J., p. 946, n. 1.    (3) 2 C. J., p. 956, n. 86.    (4) 2 C. J., p. 570, n. 31.    (5) 2 C. J., p. 643, n. 79, p. 644, n. 83.    (6) 21 C. J., p. 1170, n. 67.

APPEAL from judgments of the Superior Court of Santa Cruz County. Harry C. Lucas, Judge. Affirmed.

The facts are stated in the opinion of the court.

J. H. Morris for Appellant.

Charles B. Younger and W. P. Netherton for Respondents.

TYLER, P. J.—The above two cases were tried together before a jury in the superior court of Santa Cruz County. The causes of action in both are identical in form, although different amounts are involved therein. In the action against the Santa Cruz National Bank it is alleged that one A. S. T. Johnson was employed by plaintiff as a bookkeeper with authority to collect money and checks due and owing to plaintiff from its various customers in the city of Santa Cruz, but that he had no authority whatsoever to indorse or cash checks payable to plaintiff; that Johnson, acting in

---

5.  See 1 Cal. Jur. 743, 745.
6.  See 10 Cal. Jur. 506.

such capacity for plaintiff, collected from various persons named in the complaint, for the use and benefit of plaintiff, certain checks payable to it; that the makers of said checks each had a commercial deposit in said bank and that all said checks were drawn against such deposits respectively; that Johnson upon collecting the same at various times indorsed each of them as follows: "H. Cowell Lime and Cement Co., per A. S. T. Johnson, Mgr.," and cashed the same at the defendant bank; that Johnson retained the proceeds of these checks, used the same for his own purposes, and never turned the proceeds or any part thereof over to plaintiff; that plaintiff never had any deposit in said bank; that upon cashing such checks defendant bank stamped the same "Paid," with its name and the date thereon, and thereupon charged the amounts thereof to the account of the respective makers thereof; that the indorsing and cashing of the checks by Johnson were without the knowledge or consent of plaintiff and were entirely without authority; that upon discovery that Johnson had so indorsed and cashed the checks plaintiff made demand upon defendant that it repay to it the amount thereof, but that the bank has refused to do so and that Johnson has never paid the same to plaintiff. That the checks so indorsed and paid were ten in number, aggregating the sum of $1,007.44.

[1]   The allegations against the Farmers and Merchants National Bank were the same as above, excepting that the checks were five in number, aggregating the sum of $965.83 and were drawn by persons having accounts in this particular bank. In both cases the wrongful indorsement and cashing of each check is made the basis of a separate count. There is also a common count for money had and received covering each check. Defendants answering, admitted that each of the checks referred to in the complaint was drawn, made payable to plaintiff, collected, indorsed and cashed by Johnson as alleged; that the respective makers of each of said checks had a commercial deposit in the defendant bank upon which said check was drawn; that each of said checks was cashed by such bank respectively and charged against the maker's deposit and in due course of business returned by such bank to the respective makers thereof; that plaintiff made written demand upon defendants for the repayment of the amounts of these checks, and that defendants refused the

same. The main issue raised and relied on by defendants in each case was that Johnson had ostensible authority to indorse and cash the checks. The verdict of the jury was for defendant in each case and judgment was entered accordingly. Motion for a new trial was made and denied by reason of the court's failure to act upon the same within the time prescribed by law. It is here claimed that there is no evidence in the record to support the verdict or the judgment in either of the cases. This contention is based upon the premise that the facts, as presented, show no ostensible authority in Johnson to indorse and cash checks for plaintiff. Primarily, it may be stated that ostensible authority is defined to be such as a principal, intentionally or by want of ordinary care, causes or allows a third person to believe the agent to possess. (Civ. Code, sec. 2317.) Ordinarily, as an abstract principle of law, an agent authorized to receive checks in payment for his principal may not have authority to indorse and collect the same. On the other hand, however, the course of dealing may be such as to give to the agent apparent authority to do these very acts, in which case a bank cashing the same would not be compelled to pay again. The authority is implied, if at all, from the facts of the particular case. If, then, a principal by his acts has led others to believe that he has conferred this authority upon his agent, he cannot be heard to assert, as against third persons who have relied thereon, in good faith, that he did not intend to confer such power. The determination of this character of authority is not a matter that lends itself to any hard-and-fast rule. It is almost wholly a question of fact. [2] The issue was presented to the jury whether Johnson was permitted by appellant to conduct its business under such methods and for such a length of time as was sufficient to warrant the conclusion that he was authorized to indorse checks, and we are of the opinion that the evidence upon the subject supports the conclusion that Johnson had the authority. [3] In other words, the conduct of the agent with reference to plaintiff's business was sufficient to establish, by implication, that such authority was given, notwithstanding the direct testimony of the principal that the agent had no such authority. In order to establish this fact, defendants called many witnesses to prove the nature and extent of Johnson's dealings with those who had busi-

ness transactions with his company. This evidence was competent to prove such fact. (*Aigeltinger* v. *Burke,* 176 Cal. 626 [169 Pac. 373].) It appears therefrom that Johnson was employed for a long period of years by plaintiff corporation and that his duties were not confined, as alleged in the complaint, to those of a mere bookkeeper, but rather as a manager of plaintiff's extensive business, and that his acts as such manager were of a character sufficient to warrant those dealing with him in believing that he possessed authority to do the very acts in question. We do not deem an extended recital of this evidence would answer any useful purpose. In substance it shows that while Mr. Harry Cowell testified that he was president and manager of the company, it appeared that he was seldom in Santa Cruz, and Johnson during his employment had almost exclusive management of plaintiff's business. He sold materials dealt in by the company and fixed the prices for the same, and accepted checks in payment thereof. In these transactions, customers were referred to by employees of the company to Johnson to transact the business. He placed advertisements in the local newspapers and paid for the same. He appeared in the city directory and upon the register of voters as manager of plaintiff. He took up all matters of county assessments in which his company was interested with the assessor. He appeared before the Chamber of Commerce as manager of the company in matters affecting the welfare of the county. While the company did not keep a banking account in Santa Cruz, Johnson attended to all banking transactions. He cashed checks and purchased drafts in favor of plaintiff which he paid for by checks and money. The only fair inference to be drawn from these and other facts is that the officers of the bank knew and relied on the ostensible authority of Johnson to perform the acts in question and they abundantly prove want of ordinary care on the part of plaintiff in the conduct of its business which was sufficient to lead defendants to believe that Johnson was clothed with full and ample power and authority in the premises. [4] Where a principal makes it possible, through his acts, for his own agent to inflict injury, the result of such injury should not be passed on to innocent persons who have dealt with the agent in good faith under his apparent authority. The law forbids the principal to deny authority in the agent which his own conduct has invited those with whom he was

dealing to assume he possessed. In such a. case a principal is bound by his acts and estopped by his own conduct from denying the authority of the agent to act. (*Robinson* v. *American Fish & Oyster Co.*, 17 Cal. App. 213 [119 Pac. 388].) [5] So where, as here, an agent is by his principal put in charge of a business as the apparent manager thereof, he is clothed with apparent authority to do all things that are essential to the ordinary conduct of such business at that place, and third persons, acting in good faith, and without notice of or reason to suspect any limitations on his authority, are entitled to rely on such appearance (*Leavens* v. *Pinkham*, 164 Cal. 242 [128 Pac. 399]; Civ. Code, sec. 2300).
[6] Where one of two innocent persons must suffer, the loss should be borne by him whose acts made the loss possible. A loss through the trust and confidence placed by a principal in his agent should not be borne by those who were led to deal with the agent through the acts of the principal. Upon this subject, therefore, we conclude that the evidence fully supports the conclusion reached. Respondents demurred to the complaints on the ground that they did not state a cause of action. At the trial they objected to the receipt in evidence of the checks in question, claiming that there was no privity of contract between Henry Cowell Lime and Cement Company and the defendants; that the obligation of the banks was to their respective clients, and that the bank's obligation was to their customers only. We are cited to *Elyria Savings & Banking Co.* v. *Walkin*, 92 Ohio St. 406 [Ann. Cas. 1917B, 1055, L. R. A. 1916D, 433, 111 N. E. 147], *State Bank of Chicago* v. *Mid-City Trust Co.*, 295 Ill. 599 [12 A. L. R. 989, 129 N. E. 498], and other cases in support of this contention. See, also, Brannan's Neg. Ins. Law, 4th ed., sec. 137. There is a conflict in the authorities upon this subject. (*Chamberlain Metal etc. Co.* v. *Bank of Pleasanton*, 98 Kan. 611 [160 Pac. 1138].) Considering the conclusion we have reached, a discussion or decision upon this subject becomes unnecessary.

The judgments are affirmed.

Knight, J., and Cashin, J., concurred.

A petition by appellant to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on June 23, 1927.